49 So.2d 585 (1950)
HANNA et ux.
v.
MARTIN et al.
Supreme Court of Florida, Division B.
December 19, 1950.
Rehearing Denied January 10, 1951.
Bell & Bell and Ross Williams, all of Miami, and J. Lewis Hall, Tallahassee, for appellants.
Owen W. Pittman, Miami, for appellees.
CHAPMAN, Justice.
For one phase of this litigation see Hanna v. Martin, 160 Fla. 967, 37 So.2d 579. As will be shown by the record, this Court on appeal affirmed the final decree entered below. Pertinent portions thereof are viz.:
"4. That the portion of the fill constructed by defendants on their submerged lands, which has fallen or moved onto the submerged lands of the plaintiffs' submerged lands. That such encroachment and trespass results from the fact that the defendants' fill was not bulkheaded as required *586 in such case by Sec. 309.01, F.S.A., and the plaintiffs as adjoining riparian owners are entitled to protection against the same under remedies as provided in such case in Sec. 271.01, F.S.A.
"5. That the defendants Faud H. Hanna and Margaret Alice Hanna, his wife, their agents, servants and employees, be and they hereby are enjoined and restrained from continuing or permitting the continuance of the said encroachment on the plaintiffs' submerged lands in Biscayne Bay in the front of and easterly from the plaintiffs' said lands and south of the dividing line of the lands of the parties as projected out into the bay; and the said defendants are hereby further enjoined and restrained from causing or permitting further or additional encroachment of their rock, debris or other fill material onto the said submerged lands of the plaintiffs.
"6. It is recognized by this Court that this injunction restraining further encroachment and restraining continuance of the present encroachment cannot be complied with by the defendants without removing from plaintiffs' submerged lands the rocks and other fill which constitute the present encroachment, and, as to future encroachments, without building a bulkhead or other effective retaining wall along the projected dividing line between the lands of the parties; and if the material causing the present encroachment on plaintiff's submerged lands is not removed and a bulkhead or other adequate retaining wall to protect against future encroachments is not constructed along said dividing line, all within 90 days from the date of this decree, the failure of the defendants to do so will constitute a violation of this injunction by which defendants may be made liable for damages to the plaintiffs; and this Court reserves jurisdiction, in that event to determine the liability and the amount of damages and to award such damages to the plaintiffs, or, if upon application by the plaintiffs for a determination of damages, defendants shall indicate a desire for jury trial on the matter of damages, then to transfer it to the law side of this Court for a jury determination of such question of such damages."
On the going down of our mandate on the former appeal the cause, by appropriate order dated April 1, 1949, was transferred to the law side of the Court for the purpose of having a jury assess the amount of damages sustained by the plaintiffs because of the fill constituting the encroachment described in the pleadings. The elements of damages awarded for disobeying the injunctive order dated May 14, 1948, were: (1) the costs of removal from the plaintiffs' submerged land the rocks and other fill which constitute the present encroachment; (2) "and if the material causing the present encroachment on plaintiffs' submerged land is not removed and a bulkhead or other adequate retaining wall to protect against future encroachment is not constructed along said dividing line, all within 90 days from date of this decree, the failure of the defendants to do so will constitute a violation of this injunction by which defendants may be liable in damages to the plaintiffs." (Emphasis supplied.)
As to the elements of damages recoverable the trial Court's instructions to the jury are viz.:
"The defendants did not remove the rock and the debris. They did not build the bulkhead or other retaining wall as they were directed to by the Court back in May 1948, and so as the Court provided, the matter is being submitted to you for the determination of the amount of damages to which the plaintiffs are entitled to.
"So you see what your problem is to do is this: To put the plaintiffs, by an award of money, in the same situation that they would have been in had Dr. and Mrs. Hanna complied with the Court's order by removing the debris themselves and building the retaining wall. You are to allow such damages as would now put the plaintiffs in the same position he would have been in without the necessity to spend any money if the defendant had done these things which the Court had directed.
"Now, the plaintiffs' damages may (italics mine) be computed by determining how much it would cost the plaintiffs to remove all of the debris, boulders and foreign matter which have shifted from the Hanna *587 property to the waterfront east of and adjoining the Martin property, together with such amount as it would cost the plaintiffs to keep their waterfront free from debris, which might shift from the Hanna property to the Martin property.
"As I said a moment ago, the Court has already determined that that future shifting could only be prevented by the building of a bulkhead or other retaining wall on the plaintiffs' north lot line from their present upland eastward into the Bay to the channel line. Therefore, it naturally follows that, in addition to clearing the plaintiffs' waterfront, they have an additional damage in the amount of cost in erecting a bulkhead or retaining wall. The amount it would cost plaintiffs to erect a bulkhead is a proper amount for you to decide." (Emphasis supplied.)
It appears from the testimony that the costs of removing the fill alone would approximate the sum of $3,600.00, while the costs of constructing the bulkhead would be the sum of about $13,000.00. The jury awarded a verdict for the plaintiff below in the sum of $15,000.00. A motion for a new trial was made and denied and a judgment was entered for the plaintiffs below in the sum of $15,000.00. The defendants appealed. Counsel for appellants concede that the costs of removing the fill and debris are a proper element of damages recoverable, but the costs of constructing a bulkhead were an improper element of damages chargeable to the plaintiffs under Section 271.01 and 309.01, F.S.A., and contrary to the general law of damages. Counsel for appellees contend that the elements of damages awarded below were proper and free from error because they were entered against "the defendants for their violation of the injunction previously entered."
Decrees in equity are to be construed with reference to the pleadings and proceedings, the testimony and the subject matter of the litigation. Pearson v. Helvenston, 50 Fla. 590, 39 So. 695. Courts of chancery have the power to enforce their decrees by punishment for contempt and otherwise. In the case at bar a contempt order was never entered but the decree ordered the removal of the encroachment and fixed liability for damages accruing to the plaintiffs for a disobedience of the final decree. Chapters 271 and 309, F.S.A., cannot be construed as authority for awarding a judgment against the appellants-defendants in the sum of $13,020.00 as damages for the costs of constructing a bulkhead referred to in the pleading. Damage may be defined to be the loss, injury or deterioration caused by negligence, design or accident of one person to another in respect to his person or property.
The fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which give rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265. The record reflects that the defendants-appellants disobeyed the injunction order entered below but no penalty was imposed for so doing by the Chancellor. The measure of damages to be awarded, in such cases, should be limited to the actual damages sustained by the aggrieved party. 43 C.J.S., Injunctions, § 276, page 1051. The reasonable costs of removing all the rock and debris from the property, with other kindred items, will fully compensate the plaintiffs-appellees. See 25 C.J.S., Damages, § 84, page 603; Atlantic Coast Line R. Co. v. Saffold, 130 Fla. 598, 178 So. 288.
It appears by the record that the estimate of the cost of removing all the rock, sand and concrete placed in the bay along the dividing line of the two properties, according to the plaintiffs'-appellees' witnesses, was approximately $3,600.00 The defendants-appellants offered the testimony of W.T. Price (Tr. 62-73). This witness testified that he estimated the cost of removing the rock, sand and concrete from the Martin property at the sum of $200.00. The trial court struck the testimony of the witness as to the estimated *588 cost of the removal on the ground that it was vague, indefinite and insufficient. The witness returned to the stand and testified that he would remove the rock, sand and concrete for the sum of $1,100.00. Counsel for defendants-appellants proffered to prove that Mr. Price would testify that falling rock or material or sand from the Hanna property into the Martin submerged lands or the adjoining upland would not depreciate the value of the Martin submerged lands. An objection was sustained to the proffer on the theory that the evidence was immaterial. It is our conclusion that the costs of the construction of a bulkhead about the property in question without a requirement or obligation upon the part of appellees to construct a bulkhead was an improper element of damages and for this reason a new trial is awarded.
Reversed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.