507 So.2d 713 (1987)
GARY MASSEY CHEVROLET, INC., a Florida Corporation, Appellant,
v.
John C. RITCH, Appellee.
No. BN-444.
District Court of Appeal of Florida, First District.
May 19, 1987.
*714 C. Robert Edewaard, Gainesville, for appellant.
Stephen A. Scott and David A. Zill, of Law Offices of Stephen A. Scott, Gainesville, for appellee.
WIGGINTON, Judge.
This cause is before us on appeal from a jury verdict and final judgment awarding appellee damages in the amount of $7,537 for breach of contract. Because we hold that the trial court erroneously instructed the jury on the issue of acceptance by an agent, we must reverse and remand for a new trial.
The proceeding below was a civil action for an alleged breach of an oral contract for the construction of a truck service addition to appellant's automobile dealership facilities in Gainesville, Florida. For the project, appellant employed the services of an architect to design and oversee the construction of the addition. As part of his services, the architect solicited bids from contractors, including appellee, and advised appellant's president, Gary Massey, during the process of selecting a contractor.
At the bid opening, the architect initially determined that appellee was the apparent low bidder. This information was communicated to appellant, but what occurred thereafter is a point of disagreement.
Gary Massey testified that although appellee was the primary contractor under consideration, he was never selected. When considering appellee's qualifications, Massey admitted having raised the issue of whether appellee could post a contractor's performance bond for the job, but he expressly denied ever having communicated to the architect that appellee was acceptable or that his bid should be accepted for the project. Despite Massey's denial, appellee and the architect both testified that the architect told appellee he had been selected by Massey. They further testified that the architect had given appellee signed and sealed blueprints with which to obtain a building permit.
However, when appellee could not or did not post a performance bond, appellant, with the assistance of the architect, selected a contractor who could post a bond, and negotiated a contract for construction of the addition. Appellee was later advised by the architect of the decision to use another contractor.
Appellee then filed the lower court action seeking damages in the form of lost profits in excess of $10,700. In addition, he sought damages for lost profits related to another construction project, the Airport Lounge, contending he lost the project because he relied on the architect's telling him that Massey had selected him to complete the dealership addition.
Appellant pleaded in response that there never was a contract with appellee, and if there had been a contract, appellee suffered no damages because his actual construction costs would have equalled or exceeded his bid price, and no profit would have been realized. An additional defense asserted was that appellee's measure of damages must be mitigated by his earnings and profits from work he was actually able to do during the time period of the Massey project.
In support of this latter defense, appellant was prepared to offer appellee's business records and accounts as evidence. However, during a pretrial conference, the court sustained appellee's objection to these documents and ruled that the doctrine of mitigation of damages did not apply in this case based on the holding in Sullivan v. McMillan, 37 Fla. 134, 19 So. 340 (1896).
During the trial, appellee testified that he had intended to do much of the work himself, and hire what labor he would have needed to assist him. The evidence showed that the architect prepared a standard form written (AIA) contract, which appellee testified he signed, but which Gary Massey never signed.
During appellee's case in chief, the trial court initially overruled appellant's objection to the use of plaintiff's exhibit 3, a cost *715 estimate sheet prepared by appellee in conjunction with the submitting of his bid. However, after voir dire of appellee regarding the document, the court changed its ruling when appellant was able to demonstrate that the entries on the sheet lacked trustworthiness. Nonetheless, the court permitted appellee to refresh his memory by reference to the document. In appellee's subsequent testimony, however, he testified as to the cost figures recorded on the document rather than from his own refreshed memory. Appellant objected on the basis that such testimony was hearsay and did not qualify as an exception. The objection was overruled and appellee was permitted to testify as to the recorded cost estimates for materials and subcontractors to complete the project. Thereafter, appellant requested the introduction of the exhibit into evidence and specifically waived his objection to it.
During the charge conference, the parties specifically conceded that the architect had only the actual authority to convey to any of the contractors appellant's decision. A lengthy discussion was held thereafter concerning how the jury could be charged regarding such authority. The court then charged the jury, and the jury returned a verdict for appellee in the amount of $7,537. This amount, plus prejudgment interest and taxable costs, resulted in a final judgment in favor of appellee for $11,545.38.
Four points are raised by appellant on this appeal. Under point I, appellant argues that the trial court erred in its pretrial ruling that appellant would not be permitted to introduce into evidence appellee's business records or any other evidence to prove the occurrence or lack of mitigation of damages by the appellee. We affirm. The instant alleged contract was clearly a nonexclusive contract which would have allowed appellee, had he chosen to do so, to have entered into other similar contracts. Thus, appellee was under no duty to minimize his losses. Compare Graphic Associates, Inc. v. Riviana Restaurant Corporation, 461 So.2d 1011 (Fla. 4th DCA 1984); Physicians Reference Laboratory, Inc. v. Daniel Seckinger, M.D. and Associates, P.A., 501 So.2d 107, 109, n. 2 (Fla. 3d DCA 1987); Sullivan v. McMillan, 37 Fla. 134, 19 So. 340 (1896).
Under point III, appellant urges that the trial court erred by refusing to give the requested instruction that appellee must perform the alleged construction contract according to applicable laws, including the requirement to provide workers' compensation insurance for his and the subcontractor's employees. Again, we affirm. The trial court did not abuse its discretion in failing to give the requested instruction since, as the court indicated, the instruction would serve only to confuse the jury and to sidetrack the real issues. In any event, the jury's verdict indicates that it reduced the award at least by the labor costs testified to by appellant's witnesses.
Finally, we affirm on point IV, under which appellant maintains that the trial court erroneously permitted appellee's hearsay testimony of dollar figures from plaintiff's exhibit 3, the bid computation sheet. Appellant's waiving his objection to plaintiff's exhibit 3 and requesting its admission into evidence waived any objection to appellee's testimony as to the estimates contained in that document.
However, we find merit to an argument presented under appellant's point II, and hold that the trial court erred in its instruction to the jury on the crucial issue of acceptance.[1] It is undisputed, as the *716 parties conceded during the charge conference, that the architect had only the actual authority to convey to appellee "Massey's decision." Apparent authority was expressly, and, again concededly, not an issue; no one was under the impression that the architect possessed the authority to do other than to convey Massey's decision. Appellee expressly testified that he had known the architect possessed only the authority to pass on information of appellant's decision, and that the architect did not have the authority to make the decision.
Nevertheless, the court gave the following instruction:
Secondly, acceptance: Whether Gary Massey Chevrolet, Inc. and/or Gary Massey, or their agent, accepted the offer submitted by John C. Ritch. If the acceptance was by their agent, I will tell you as a matter of law that the agent had actual authority to do that.
Appellant's counsel briefly interrupted the court, and asked, "To do what, Your Honor?" The court responded to this interruption and stated,
Acceptance: That's what I've just instructed them on. To accept  in other words  I'm sorry.
The agent had the actual authority to convey  which is what I'm going to get to  to convey Mr. Massey's acceptance, or Massey Chevrolet, Inc.'s acceptance  let me reread that to you.
Whether Gary Massey Chevrolet, Inc. or Gary Massey, or their agent accepted the offer submitted by John C. Ritch. If the acceptance was by their agent, I instruct you as a matter of law that the agent had the actual authority to communicate Mr. Massey's or Massey Chevrolet, Inc.'s acceptance. [Emphasis added.]
Obviously, that instruction could have led the jury to conclude that the architect had the authority to accept appellee's offer. Such instruction was clearly not in accordance with the evidence or the parties' concession.
Consequently, we must reverse and remand for a new trial.
MILLS and ERVIN, JJ., concur.
NOTES
[1] Several arguments were made under point II directed toward a lengthy discussion held during the jury charge conference concerning the architect's ability to bind appellant to the contract by his communicating to appellee, in so many words, Massey's decision, despite the fact that it may not have been proven that Massey had actually decided to accept appellee's bid. As best we can glean from appellant's initial brief, apart from the argument concerning the charge on acceptance, upon which we base our decision to reverse, appellant also argues that the court gave an erroneous instruction on the binding effect of an architect's mistaken, unauthorized or intentional miscommunication, since the architect was a special agent, and that the court failed to give a clear instruction on the absolute necessity of proving acceptance by Massey of appellee's bid offer. However, neither of these issues was properly preserved for our review. Appellant did not proffer an instruction as to either point, and made only a vague, general objection to "any instructions that would, in essence, elevate the authority of Mr. Tonnelier [the architect] to carry a message of Mr. Massey's decision to any contractor ... to the authority to bind Mr. Massey to a contract ..." (Record at p. 1384).