# Supreme Court of Florida

―――――――

No. SC21-43

―――――――

**ELAINE DIAL,**
Petitioner,

vs.

**CALUSA PALMS MASTER ASSOCIATION, INC.,**
Respondent.

April 28, 2022

PER CURIAM.

We review the Second District Court of Appeal's decision in

*Dial v. Calusa Palms Master Ass'n,* 308 So. 3d 690 (Fla. 2d DCA

2020), in which the Second District certified the following question

of great public importance:

> DOES THE HOLDING IN *JOERG V. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,* 176 SO. 3D 1247 (FLA. 2015), PROHIBITING THE INTRODUCTION OF EVIDENCE OF MEDICARE BENEFITS IN A PERSONAL INJURY CASE FOR PURPOSES OF A JURY'S CONSIDERATION OF FUTURE MEDICAL EXPENSES ALSO APPLY TO PAST MEDICAL EXPENSES?

*Id.* at 692.[1]  For the reasons explained below, we answer the certified question in the negative and approve the Second District's decision in *Dial.*

## I.  BACKGROUND

This case arises out of a negligence action, in which Elaine Dial sought to recover past medical expenses due to injuries she sustained when she tripped and fell on property owned by Calusa Palms Master Association, Inc.  Before trial, the trial court granted a motion in limine that precluded Dial from introducing as evidence the gross amount of her past medical expenses and limited her to introducing only the discounted amounts paid by Medicare.  After the jury awarded Dial $34,641.69 in past medical expenses, Dial appealed arguing that *Joerg* allowed her to admit the full amount of her past medical expenses as evidence.

The Second District affirmed the trial court's ruling based upon its prior decision in *Cooperative Leasing, Inc. v. Johnson*, 872 So. 2d 956, 960 (Fla. 2d DCA 2004), which held "that the appropriate measure of compensatory damages for past medical

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

expenses when a plaintiff has received Medicare benefits does not include the difference between the amount that the Medicare providers agreed to accept and the total amount of the plaintiff's medical bills." *Dial*, 308 So. 3d at 691 (quoting *Cooperative Leasing*, 872 So. 2d at 960). The Second District explained:

> While we recognize that *Cooperative Leasing* cited to the Florida Supreme Court's decision in *Florida Physician's Insurance Reciprocal v. Stanley*, 452 So. 2d 514 (Fla. 1984), a decision that was subsequently receded from in *Joerg v. State Farm Mutual Automobile Insurance Co.*, 176 So. 3d 1247 (Fla. 2015), we do not believe the *Joerg* decision "implicitly abrogated" our evidentiary ruling in *Cooperative Leasing* . . . .

*Dial*, 308 So. 3d at 691. The Second District further explained that "whatever its analytical underpinnings, the *Joerg* court very clearly set the scope of its holding to evidence concerning *future* Medicare benefits, which is not in dispute here." *Dial*, 308 So. 3d at 691.

## II. ANALYSIS

The certified question asks whether this Court's holding in *Joerg* applies to past medical expenses.[2] In *Joerg*, this Court

---

2. The certified question presents a question of law, which we review de novo. *Arch Ins. Co. v. Kubicki Draper, LLP*, 318 So. 3d 1249, 1253 n.4 (Fla. 2021).

- 3 -

addressed "[w]hether the exception to the collateral source rule created in *Stanley* applies to future benefits provided by social legislation such as Medicare." *Joerg*, 176 So. 3d at 1253.[3] This Court "conclude[d] that future Medicare benefits are both uncertain and a liability under *Stanley*, due to the right of reimbursement that Medicare retains." *Joerg*, 176 So. 3d at 1253. We explained that "it is absolutely speculative to attempt to calculate damage awards based on benefits that a plaintiff has not yet received and may never receive, should either the plaintiff's eligibility or the benefits themselves become insufficient or cease to continue." *Id.* at 1255. Ultimately, we "conclude[d] that the trial court properly excluded evidence of [the plaintiff]'s eligibility for *future* benefits from Medicare, Medicaid, and other social legislation as collateral sources." *Id.* at 1257 (emphasis added).

This Court's holding in *Joerg*, precluding the admission of evidence of a plaintiff's eligibility for future Medicare benefits, dealt only with future medical expenses. As explained by the Second

_____

3. In *Stanley*, this Court held that "evidence of free or low cost services from governmental or charitable agencies available to anyone with specific disabilities is admissible on the issue of future damages." 452 So. 2d at 515.

District below, "the *Joerg* court very clearly set the scope of its holding to evidence concerning *future* Medicare benefits, which is not in dispute here." *Dial*, 308 So. 3d at 691. Accordingly, *Joerg* has no application to the past medical expenses issue in the present case.

## III. CONCLUSION

For the above reasons, we answer the certified question in the negative and approve the Second District's decision in *Dial*.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
POLSTON, J., concurs with an opinion, in which COURIEL, J., concurs.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., concurring.

I agree with the Court's reasoning and holding that this Court's decision in *Joerg v. State Farm Mutual Automobile Insurance Co.*, 176 So. 3d 1247 (Fla. 2015), does not apply to the past medical expenses issue in this case. I also agree with the Second District Court of Appeal's decision in *Dial v. Calusa Palms Master Ass'n*, 308

- 5 -

So. 3d 690 (Fla. 2d DCA 2020), which held "that the appropriate measure of compensatory damages for past medical expenses when a plaintiff has received Medicare benefits does not include the difference between the amount that the Medicare providers agreed to accept and the total amount of the plaintiff's medical bills." *Id.* at 691 (quoting *Cooperative Leasing, Inc. v. Johnson*, 872 So. 2d 956, 960 (Fla. 2d DCA 2004)). However, I write separately to explain why I would adopt the reasoning of Justice Bell's specially concurring opinion in *Goble v. Frohman*, 901 So. 2d 830 (Fla. 2005), and limit the admissible evidence of past medical expenses to the amounts medical providers were willing or required to accept in full satisfaction for services rendered to a plaintiff, regardless of whether those amounts are derived from government insurance, private insurance, or other third-party arrangement.

"It has long been established as a fundamental principle of Florida law that the measure of compensatory damages in a tort case is limited to the actual damages sustained by the aggrieved party." *Goble*, 901 So. 2d at 834 (Bell, J., specially concurring). "The objective of compensatory damages is to make the injured party whole to the extent that it is possible to measure his [or her]

injury in terms of money." *Mercury Motors Express, Inc. v. Smith*, 393 So. 2d 545, 547 (Fla. 1981). "A plaintiff, however, is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant." *MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223 (Fla. 2008).

In *Goble,* the majority concluded that "[t]he contractual discounts negotiated by Goble's HMO fall under the statutory definition of 'collateral sources' that are to be set off against an award of compensatory damages under [section 768.76, Florida Statutes (1999)]." 901 So. 2d at 833 (Bell, J., specially concurring). In his specially concurring opinion, Justice Bell explained an alternative reason, outside of the collateral source context, why Goble was not entitled to recover the full amount of his medical bills: "Goble has not paid, nor is he obligated to pay, the prediscount amount of his medical bills. And, absent any evidence that the discount was intended as a gift, Goble can recover no more than the amount he paid or is obligated to pay." *Id.* As Justice Bell further explained,

Under common-law principles of compensatory damages, Goble can recover only the discounted portion of his medical bills—the only portion that he actually was obligated to pay. The amount of the full (prediscount) bill that was written off pursuant to the contractual agreement between Goble's HMO and Goble's medical-services provider was an amount that Goble never was obligated to pay. This amount, therefore, does not represent Goble's actual damages. To allow for the recovery of this full amount, under the guise of "compensatory damages," would allow for the recovery of what the district court aptly described as "phantom damages."

*Id.* at 833-34 (quoting *Goble v. Frohman*, 848 So. 2d 406, 410 (Fla. 2d DCA 2003)).

In this case, Dial sought to introduce the gross amount of her past medical expenses—an amount that she will never be responsible for paying. Dial's medical providers billed $106,087.08 after she became eligible for Medicare, but Medicare paid a discounted amount of $19,973.89 (and Blue Cross Blue Shield paid other costs not covered by Medicare) in full satisfaction of the medical bills. Medicare has a subrogation right of reimbursement for the $19,973.89, the amount Medicare paid medical providers on Dial's behalf. However, the roughly $85,000 that was written off or discounted is not recoverable either by Dial's medical providers or Medicare, and Dial is not liable to pay that amount. *See*

- 8 -

*Cooperative Leasing, Inc.*, 872 So. 2d at 960 ("Under federal law the government's right to reimbursement does not extend to amounts never actually paid to medical providers."); 42 U.S.C. § 1395cc(a)(1)(A) (providing that medical providers that accept payment from Medicare agree "not to charge . . . any individual or any other person for items or services for which such individual is entitled to have payment made under" Medicare); *cf. Goble*, 901 So. 2d at 831-32 ("Under the medical providers' contracts with Aetna, the providers have no right to seek reimbursement from Goble or from any third party for the contractual 'discount' of over $400,000, the difference between the amounts billed and the amounts paid.").

It therefore follows that admissible evidence of past medical expenses must be limited to the amounts medical providers were willing or required to accept in full satisfaction for services rendered to a plaintiff. The inflated gross amount Dial sought to admit is irrelevant to the proper measure of compensatory damages and should be inadmissible at trial. *See* Charles W. Ehrhardt, *Florida Evidence* § 402.1, at 222 (2021 ed.) ("To be admissible, evidence must be relevant; that is, it must tend to prove or disprove a

material fact."); *Thyssenkrupp Elevator Corp. v. Lasky*, 868 So. 2d 547, 551 (Fla. 4th DCA 2003) (concluding that the medical provider's "original charge becomes irrelevant" when it accepts a lesser sum from Medicare "because it does not tend to prove that the claimant has suffered any loss by reason of the charge").

These principles should apply regardless of whether the discounted amounts are derived from government insurance, private insurance, or other third-party arrangement. In deciding the issue of the appropriate measure of compensatory damages for past medical expenses, Florida district courts of appeal have erroneously created a distinction based on whether a private or public source paid the past medical expenses. *Compare Thyssenkrupp Elevator Corp.*, 868 So. 2d at 550 (holding that a plaintiff is limited to admitting into evidence the amount of past medical bills paid by Medicare rather than the gross amount), *with Nationwide Mut. Fire Ins. Co. v. Harrell*, 53 So. 3d 1084, 1087 (Fla. 1st DCA 2010) ("[A]ppellee was entitled to introduce into evidence (and to request from the jury) the gross amount of her medical bills, rather than the lesser amount paid by appellee's private health insurer in full settlement of the medical bills."). The present case

further illustrates this distinction. Dial had private insurance at the time she was injured, but she later became eligible for Medicare. Before trial, the parties agreed that Dial could admit the gross amount of her medical bills until she became eligible for Medicare. And the trial court's ruling limiting Dial to admitting the discounted amount paid by Medicare, any Medicare supplemental insurance, and Dial herself, only applied from the time she became eligible for Medicare.

The parties and amici argue that Medicare and private insurance should be treated equally, and I agree that there is no principled reason to distinguish between them. In the context of post-trial setoffs, section 768.76 creates a distinction by excluding Medicare as a collateral source. *See* § 768.76(2)(b), Fla. Stat. (2021) ("[B]enefits received under Medicare . . . shall not be considered a collateral source."). However, from an evidentiary position, both should be treated the same. The determination of the appropriate measure of compensatory damages for past medical expenses is the same regardless of the source of a plaintiff's insurance. When the proper amount is admitted into evidence, there is no need for a post-trial setoff and no resulting disparate treatment.

Accordingly, I would limit the admissible evidence of past medical expenses to the amounts medical providers were willing or required to accept in full satisfaction for services rendered to a plaintiff, regardless of whether those amounts are derived from government insurance, private insurance, or other third-party arrangement.

COURIEL, J., concurs.

LABARGA, J., dissenting.

Because I conclude that the holding in *Joerg v. State Farm Mutual Automobile Insurance Co.*, 176 So. 3d 1247 (Fla. 2015), also applies to a jury's consideration of past medical expenses, I dissent to the majority's answer to the certified question.

In *Joerg*, Luke Joerg pursued a negligence action for injuries he sustained when he was struck by a car while riding his bicycle. *Id.* at 1252. Due to a disability, Joerg was entitled to reimbursement from Medicare for his medical bills. *Id.* Before trial, "Joerg filed a motion in limine to exclude evidence of any collateral source benefits to which [he] was entitled, including discounted benefits under Medicare and Medicaid." *Id.* Ultimately, the trial court ruled that State Farm could not introduce evidence of Joerg's

future Medicare or Medicaid benefits.[4]  *Id.*  The jury found in favor of Joerg and awarded damages; State Farm appealed to the Second District Court of Appeal.  *Id.*

The Second District affirmed the trial court's rulings, except for the trial court's decision that evidence of Joerg's future Medicare benefits were inadmissible.  *Id.*  Based on this Court's decision in *Florida Physician's Insurance Reciprocal v. Stanley*, 452 So. 2d 514 (Fla. 1984), the district court concluded that Joerg's future Medicare benefits should not have been excluded because they were free and unearned.  *Joerg,* 176 So. 3d at 1253.

However, this Court quashed the Second District's ruling and concluded that the trial court properly excluded evidence of Joerg's eligibility for future benefits from Medicare, Medicaid, and other social legislation as collateral sources.  *Id.* at 1257.  In doing so,

---

4.  Notably, "[t]he trial court initially granted Joerg's motion, but only with respect to past medical bills.  After Joerg moved for reconsideration, the trial court vacated its prior ruling and allowed State Farm to introduce evidence of 'future medical bills for specific treatment or services that are available . . . to all citizens regardless of their wealth or status.'  However, it precluded State Farm from introducing evidence of [Joerg]'s future Medicare or Medicaid benefits."  *Joerg*, 176 So. 3d at 1252.

this Court receded from *Stanley* to the extent that it supported the admission of social legislation benefits as an exception to the evidentiary collateral source rule, noting that "it was never intended to apply to benefits from Medicare or Medicaid, or to collateral sources where a right of reimbursement or subrogation exists." *Id.* at 1256.

With this background in mind, in the present case, the Second District Court of Appeal certified the following as a question of great public importance:

> DOES THE HOLDING IN *JOERG V. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.*, 176 SO. 3D 1247 (FLA. 2015), PROHIBITING THE INTRODUCTION OF EVIDENCE OF MEDICARE BENEFITS IN A PERSONAL INJURY CASE FOR PURPOSES OF A JURY'S CONSIDERATION OF FUTURE MEDICAL EXPENSES ALSO APPLY TO PAST MEDICAL EXPENSES?

*Dial v. Calusa Palms Master Ass'n*, 308 So. 3d 690, 692 (Fla. 2d DCA 2020).

The correct answer to the certified question is a resounding yes; *Joerg* prohibits the introduction of evidence of Medicare benefits for the jury's consideration of past medical expenses. However, largely based on its conclusion that *Joerg* "dealt only with

- 14 -

future medical expenses," the majority answered the certified question in the negative. *Majority op.* at 4-5. I disagree.

*Joerg* did not distinguish between past and future medical expenses; it merely addressed future Medicare benefits. In fact, this Court did not consider the factual distinction between past benefits and future benefits as relevant. *See Joerg,* 176 So. 3d at 1256 n.7 ("Like *Peterson,* the Illinois Supreme Court in *Wills* also considered the admissibility of past Medicare benefits, not the future benefits at issue here. *Wills,* 323 Ill. Dec. 26, 892 N.E.2d at 1020. *Given our agreement with the policy pronouncement in Wills, we do not consider this factual distinction relevant.*") (emphasis added).

As noted by the special concurrence in *Dial,* "[a]lthough arising in the context of future benefits, *Joerg* did not *create* any exception for future benefits; rather, it *negated* the exception for future benefits, created by *Stanley,* to the rule 'that the admission of evidence of social legislation benefits such as those received from Medicare, Medicaid, or Social Security, is considered highly prejudicial and constitutes reversible error.' " *Dial,* 308 So. 3d at

693 (Rothstein-Youakim, J., specially concurring) (quoting *Joerg*, 176 So. 3d at 1250).

Most significantly, the majority ignores the primary purpose for excluding evidence of eligibility for past and future benefits from Medicare, Medicaid, and other social legislation as collateral sources: its explosive prejudicial effect.

In *Joerg*, this Court emphasized that "[a]s an evidentiary rule, payments from collateral source benefits are not admissible because such evidence may confuse the jury with respect to both liability and damages." *Joerg*, 176 So. 3d at 1249. The Court elaborated:

> [I]ntroduction of collateral source evidence misleads the jury on the issue of liability and, thus, subverts the jury process. Because a jury's fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise. Evidence of collateral source benefits may lead the jury to believe that the plaintiff is trying to obtain a double or triple payment for one injury . . . or to believe that compensation already received is sufficient recompense.

*Id.* at 1249-50 (quoting *Gormley v. GTE Prods. Corp.*, 587 So. 2d 455, 458 (Fla. 1991)).

- 16 -

The Court further emphasized: "It is also well established in Florida that the admission of evidence of social legislation benefits such as those received from Medicare, Medicaid, or Social Security, is considered highly prejudicial and constitutes reversible error." *Id.* at 1250.

Although the analysis in *Joerg* involved future medical expenses, the concerns emphatically expressed in *Joerg*—about the prejudicial effect of admitting evidence of social legislation benefits—are also, unequivocally, applicable to cases involving past medical expenses. The fact that this Court did not include past medical expenses in its analysis in *Joerg* does not render those concerns inapplicable to cases, like Dial's, that involve past expenses.

Accordingly, addressing only the question posed by the Second District Court of Appeal, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance

Second District – Case No. 2D18-4339

(Lee County)

Mark A. Boyle, Alexander Brockmeyer, and Molly Chafe Brockmeyer of Boyle Leonard & Anderson, P.A., Fort Myers, Florida; and

Scot Goldberg, Logan Goldberg, Michael Noone, and Sheba Abraham of Goldberg Noone Abraham, LLC, Fort Myers, Florida,

for Petitioner

Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, Florida,

for Respondent

Jason Gonzalez and Amber Stoner Nunnally of Shutts & Bowen LLP, Tallahassee, Florida, and Elise Engle of Shutts & Bowen LLP, Tampa, Florida,

for Amici Curiae Associated Industries of Florida and Florida Retail Federation

Mark Hicks, Dinah Stein, and Aneta Kozub McCleary of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, Florida,

for Amicus Curiae The Doctors Company

Kansas R. Gooden of Boyd & Jenerette, P.A., Miami, Florida; and Derek J. Angell of Bell & Roper, P.A., Orlando, Florida,

for Amicus Curiae Florida Defense Lawyers Association

Edward G. Guedes of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

for Amici Curiae Florida Trucking Association, Florida Chamber of Commerce, American Property Casualty Insurance Association, and Florida Justice Reform Institute

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida; and Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

for Amicus Curiae Florida Justice Association